IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LARRY IKEI, | ) | CIV. NO. 08-00395 DAE/BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THE CITY AND COUNTY OF | ) | |
| HONOLULU, SEVEN-ELEVEN | ) | |
| HAWAII, INC., DONNA GOMES, | ) | |
| MERIALEN ROSOKOW, POLICE | ) | |
| OFFICER VINCENT GONZALES, | ) | |
| POLICE OFFICER ROBINSON, | ) | |
| POLICE OFFICER NAKASONE, | ) | |
| AND DOES 1-20, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER:  (1) GRANTING DEFENDANT GONZALES' MOTION FOR
JOINDER AS CONSTRUED AS A JOINDER OF SIMPLE AGREEMENT; (2)
GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND
(3) DISMISSING THE CASE

On January 19, 2010, the Court heard Defendants' Motion for

Summary Judgment and Defendant Gonzales' Motion for Joinder to the motion for

summary judgment.  Mark S. Beatty, Esq., appeared at the hearing on behalf of

Plaintiff; D. Scott Dodd, Deputy Corporation Counsel, appeared at the hearing on

behalf of Defendants.  After reviewing the motion and the supporting and opposing

memoranda, the Court:  (1) **GRANTS** Defendant Gonzales' motion for joinder as

construed as a joinder of simple agreement; (2) **GRANTS** Defendants' Motion for

Summary Judgment; and (3) **DISMISSES** the case.  (Doc. ## 51, 61.)  The Clerk

of the Court is hereby directed to enter judgment in favor of Defendants.

BACKGROUND

This case arises out of an incident that occurred on September 6, 2006

at the Seven-Eleven convenience store on the corner of Atkinson and Kapiolani

Boulevard in Honolulu.  According to Plaintiff's complaint, he was "accosted and

threatened" by persons at the location and called 911 for emergency assistance.

(Doc. # 4 at 5.)  Honolulu Police Department ("HPD") Officers Gonzales,

Robinson, and Nakasone responded to the call.  Officer Gonzales, with the

assistance of Officers Robinson and Nakasone, entered the Seven-Eleven

convenience store and spoke with store employees Donna Gomes and Merialen

Rosokow.  The parties' allegations about the incidents that occurred after the

police arrived at the scene vary dramatically.  According to HPD Defendants,

Plaintiff was yelling and behaving threateningly to a Seven-Eleven employee when

the officers arrived at the scene.  (Doc. # 51 at 4-7.)  Plaintiff contends that

employees Gomes and Rosokow lied when they told police that Plaintiff was

violent.  (Doc. # 4 at 7.)  Plaintiff claims he was arrested and spent 14 hours in jail.

According to the complaint, Plaintiff was charged with harassment but the charges were dismissed on April 3, 2007.  (Id.)

On September 23, 2008, Plaintiff filed a First Amended Complaint ("FAC").  The FAC asserts six counts against Defendants City and County of Honolulu ("the County"), Seven-Eleven Hawaii, Inc., Seven-Eleven employees Donna Gomes and Merialen Rosokow, Does 1-20, and Officers Gonzales, Robinson, and Nakasone (collectively, "HPD Defendants").  Count I is a negligent hiring, training, and supervision charge against Seven-Eleven.  Count II is a defamation claim against HPD Defendants, Rosokow, Gomes, and Does.  Count III alleges violations of Plaintiff's First Amendment rights against HPD Defendants, Does, and the County.  Count IV alleges violations of Plaintiff's Fourth Amendment right to be free from arrest and prosecution without probable cause against HPD Defendants, the County, and Does.  Count V asserts violations of Plaintiff's Fourteenth Amendment right to liberty against HPD Defendants, the County, and Does.  Count VI is an intentional infliction of emotional distress ("IIED") claim against HPD Defendants, Does, the County, and employees Gomes and Rosokow.

In an order filed January 22, 2009 (the "January 22, 2009 Order"), this Court dismissed Counts II through VI as against the County for failure to state a

claim upon which relief can be granted.  (Doc. # 20.)  On December 1, 2009, the parties stipulated to dismissal with prejudice of all claims against Seven-Eleven Hawaii.  (Doc. # 55.)  Therefore, Count I, which was brought only against Seven-Eleven, was dismissed in its entirety.

Following these orders, the remaining claims were:  Count II against HPD Defendants, Does and employees Rosokow and Gomes; Counts III, IV, and V against HPD Defendants and Does; and Count VI against HPD Defendants, Does, Gomes, and Rosokow.

On November 24, 2009, Officers Nakasone and Robinson filed the instant Motion for Summary Judgment and seek summary judgment on Counts II through VI.  (Doc. # 51.)  On December 21, 2009, Officer Gonzales filed a Motion for Substantive Joinder with Nakasone and Robinson's motion.  (Doc. # 61.)

On December 29, 2009, Plaintiff filed his Opposition.  (Doc. # 66.) Although Plaintiff disputes HPD Defendants' arguments as to Counts III, IV, and V, Plaintiff states that he is "no longer pursuing state law claims of defamation and IIED" and "does not dispute Count 2, Defamation and Count 6, IIED."  (Id. at 1, 15.)

On January 8, 2010, HPD Defendants filed their Reply.  (Doc. # 69.)

<u>STANDARD OF REVIEW</u>

Rule 56 requires summary judgment to be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>see</u> <u>also</u> <u>Porter v. Cal. Dep't of Corr.</u>, 419 F.3d 885, 891 (9th Cir. 2005); <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  <u>See</u> <u>id.</u> at 323.  A moving party without the ultimate burden of persuasion at trial -- usually, but not always, the defendant -- has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  <u>Nissan Fire & Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of

material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings. Porter, 419 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers. S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties."). "[A]t least some 'significant probative evidence'" must be produced. T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge

must assume the truth of the evidence set forth by the nonmoving party with

respect to that fact." T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence

and inferences must be construed in the light most favorable to the nonmoving

party.  Porter, 419 F.3d at 891.  The court does not make credibility determinations

or weigh conflicting evidence at the summary judgment stage.  Id.

DISCUSSION

I.   Joinder

On December 21, 2009, Gonzales filed a motion for substantive

joinder to the motion for summary judgment, twenty-seven days after the original

motion for summary judgment was filed.  Pursuant to Local Rule 7.9, "any

substantive joinder in a motion . . . must be filed and served within two business

days of the filing of the motion" except with leave of court.  However, a "joinder

of simple agreement may be filed at any time."  Because Gonzales filed the motion

for substantive joinder well beyond the two-day requirement without leave of the

court, the Court strikes the unauthorized supplemental memorandum and construes

the motion as a joinder of simple agreement.  The Court GRANTS Gonzales'

motion for joinder as construed as a joinder of simple agreement.

II.   <u>Withdrawn Claims</u>

In his Opposition, Plaintiff expressly withdraws his claims against HPD Defendants, Rosokow, Gomes, and Does 1-20 as to defamation (Count II) and IIED (Count VI).  Plaintiff states that he is "no longer pursuing state law claims of defamation and IIED" and "does not dispute Count 2, Defamation and Count 6, IIED."  (Opp'n at 1, 15.)  Plaintiff states he is withdrawing these counts for "various strategic reasons."  (<u>Id.</u> at 1.)  Plaintiff correctly asserts that, after this withdrawal, the only counts remaining for adjudication are Counts III through V pursuant to 42 U.S.C. § 1983 against HPD Defendants.  (<u>Id.</u> at 1.)  The Court hereby deems Counts II and VI withdrawn.

Plaintiff also states that Plaintiff is no longer pursuing any charges against HPD Defendants in their official capacity.  (Opp'n at 15.)  The Court hereby deems all counts against HPD Defendants in their official capacity withdrawn.

III.   <u>Qualified Immunity</u>

HPD Defendants contend that they are entitled to qualified immunity as to the section 1983 claims in Counts III through V.

"To establish that a state official is personally liable in an action under 42 U.S.C. § 1983, a plaintiff must show that 'the official, acting under color of

8

state law, caused the deprivation of a federal right.'" Spoklie v. Montana, 411 F.3d 1051, 1060 (9th Cir. 2005) (quoting Hafer v. Melo, 502 U.S. 21, 25 (1991)). "Qualified immunity" is an immunity from suit, not a mere defense to liability. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, — U.S. —, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  In analyzing the qualified immunity defense, the court must determine:  (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right"; and (2) "whether the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct."  Id. at 816.

It is within the court's discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  Id. at 818; see Mueller v. Auker, 576 F.3d 979, 993 (9th Cir. 2009).

"If a reasonable official could have believed that his actions were lawful, summary judgment on the basis of qualified immunity is appropriate. . . .

Only if there be a genuine issue of fact that would preclude a grant of summary judgment, should the court let the case proceed to trial." Hemphill v. Kincheloe, 987 F.2d 589, 593 (9th Cir. 1993) (citations omitted).  "[T]he court should ask whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed [several] years after the fact." Hunter v. Bryant, 502 U.S. 224, 228 (1991); see Franklin v. Fox, 312 F.3d 423, 437 (9th Cir. 2002) (determining whether officers reasonably could have believed they had probable cause for an arrest).  Indeed, the qualified immunity doctrine protects government officials from their exercise of poor judgment, and fails to protect only those who are "plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).  "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Pearson, 129 S. Ct. at 815 (citation omitted).

A.      Probable Cause to Arrest Plaintiff (Count IV)

        The Court in its discretion will address the first prong of the qualified immunity analysis first, namely, "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." Pearson, 129 S. Ct. at 816.

10

Because HPD Defendants have moved for summary judgment and presented

evidence that there was probable cause for Plaintiff's arrest, Plaintiff cannot

"defeat summary judgment by relying on conclusory allegations in [his] pleading.

[Plaintiff] has the burden to come forward with specific facts . . . to show that the

officers' [arrest of Plaintiff] was indeed a violation of the Fourth Amendment."

Mattos v. Agarano, — F.3d —, 2010 WL 92478, at *2 (9th Cir. Jan. 12, 2010).

The constitutional right Plaintiff claims HPD Defendants violated is

Plaintiff's Fourth Amendment right to be free from arrest without probable cause.

Plaintiff alleges that HPD Defendants arrested Plaintiff for "pretextual reasons,"

and had "malice toward Plaintiff" because Plaintiff had critisized their "failure to

do their job."  (FAC at 14-15.)

The Fourth Amendment to the U.S. Constitution provides, in part, that

"[t]he right of the people to be secure in their persons, houses, papers, and effects,

against unreasonable searches and seizures, shall not be violated, and no warrants

shall issue, but upon probable cause."  "Under the Fourth Amendment, a

warrantless arrest requires probable cause."  United States v. Lopez, 482 F.3d

1067, 1072 (9th Cir. 2007).  "'Probable cause to arrest exists when officers have

knowledge or reasonably trustworthy information sufficient to lead a person of

reasonable caution to believe that an offense has been or is being committed by the

person being arrested.'" <u>Rodis v. City & County of San Francisco</u>, 558 F.3d 964, 969 (9th Cir. 2009) (quoting <u>Lopez</u>, 482 F.3d at 1072).  Probable cause has also alternatively been described as being present when "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that the defendant had committed a crime." <u>Lopez</u>, 482 F.3d at 1072.  The probable cause standard that a court applies is "incapable of precise definition or quantification" and instead "depends on the totality of the circumstances." <u>Rodis</u>, 558 F.3d at 969.

HPD Defendants submit declarations recounting the events that transpired leading to the arrest.  According to their statements, they observed Plaintiff moving aggressively toward Seven-Eleven employee Rosokow, and yelling accusations at her in a threatening manner.  They observed Rosokow run away to the back room in apparent fear for her safety.  For instance, Gonzales stated that "due to Plaintiff's demeanor and his actions, I believed that Plaintiff might attempt to inflict bodily injury to Rosokow and so I stepped in front of Plaintiff's path to stop him from further advancing on her.  Rosokow then ran to a back room of the store."  (Gonzales Mot. Decl. ¶ 5.)  Plaintiff was observed making racial utterances about Micronesian customers inside and outside the store.  (Nakasone Mot. Decl. ¶ 3; Robertson Mot. Decl. ¶¶ 4, 5; Gonzales Mot. Decl.

12

¶¶ 3, 5.)  Plaintiff also yelled at the officers and allegedly made statements such as: "all you fucking cops are the same, you are all out to get me."  (Gonzales Mot. Decl. ¶ 4.)

Statements submitted by employees Rosokow and Gomes corroborate HPD Defendants' version of events.  According to Rosokow's statement submitted to the HPD, Plaintiff began yelling at Rosokow after he had an argument with Rosokow's uncle, who was a customer in the store.  (Mot. Ex. B at 3.)  Rosokow stated that Plaintiff pointed his finger at her, yelled at her, and walked toward her saying "he's your relative."  (Id.)  She described herself as scared that he would hurt her.  (Id.)  She also stated that the officers stepped in front of Plaintiff and "told him to calm down," but he "just kept swearing and yelling at the officers." (Id.)  Likewise, Gomes states in her HPD statement that Plaintiff "started yelling at [the] officers and [her] coworker [Rosokow]" and pointed his finger at Rosokow. (Id. at 4.)

The parties do not dispute that Plaintiff was arrested and subsequently charged with harassment in violation of Hawaii Revised Statutes ("HRS") § 711-1106.  "Harassment" is defined under state law as follows:

(1) A person commits the offense of harassment if, with intent to harass, annoy, or alarm any other person, that person:

> (a) Strikes, shoves, kicks or otherwise touches another person in an offensive manner or subjects the other person to offensive physical contact;
> (b) <u>Insults, taunts, or challenges</u> another person in a manner likely to provoke an immediate violent response or <u>that would cause the other person to reasonably believe that the actor intends to cause bodily injury</u> to the recipient . . .
> . . . .

Haw. Rev. Stat. § 711-1106 (emphasis added).  Under Hawai`i state law, both individual police officers and members of the public may be the object of the offense of harassment.  See <u>In re Doe</u>, 76 Hawai`i 85, 91 (1994).

Plaintiff submits only his own filed reports and self-serving declaration to oppose the testimonials of the witnesses and the defendants. Plaintiff's rather rambling narrative essentially rests on his contention that the testimonies of the HPD Defendants and Seven-Eleven employees are lies.  In briefing submitted to the Court, Plaintiff denies that he was violent or threatening, instead claiming that he was polite to the Seven-Eleven employees.  But arguments made in a brief are not facts –  Plaintiff must have actual evidence to support the allegations submitted in the opposition to HPD Defendants' motion for summary judgment.

Plaintiff's version of the facts is uncorroborated by other evidence. Aside from Plaintiff's own assertions, the only other evidence submitted are

unauthenticated transcripts that do not create any factual issues.[1]   To the contrary, testimony by the Seven-Eleven employees contradicts Plaintiff's assertions and corroborates the HPD Defendants' testimony about Plaintiff's behavior.

It is noteworthy that, although the opposing memoranda contends that Plaintiff was polite, nowhere in Plaintiff's own declaration does he affirmatively disavow yelling or approaching employee Rosokow.  (Ikei Opp'n Decl. ¶¶ 4-21.) He does not claim that he spoke calmly, and he does not deny that he walked toward Rosokow while yelling.  Plaintiff's own declaration does not, therefore, even allege contradictory facts.  Nor is this simply a matter of plaintiff-said, police officer-said; there are other witnesses (the Seven-Eleven employees) who confirm HPD Defendants' descriptions of Plaintiff's behavior.

Moreover, as noted by the Court during the hearing on this matter, Plaintiff's counsel appears to misinterpret the testimony on the record and contends that the testimony stands for facts that it simply does not.  For instance, Rosokow's deposition attached as Exhibit H merely indicates that Plaintiff became angry when

---

[1] The exhibits attached to Plaintiff's concise statement of facts include a summary of Plaintiff's own allegations, an officer's acknowledgment that Plaintiff had said he would file a complaint, an officer's statement that he could not remember a particular fact without looking at his report, and Rosokow's statement that the police were not going to make a complaint against the Seven-Eleven employees.  (Pl. CSOF Exs. B-H.)

the police officers "were going to leave without making a complaint" against the Seven-Eleven employees or the individual identified as Rosokow's uncle. (Pl. CSOF Ex. H at 7.) Nowhere does her statement support Plaintiff's contention that the police officers arrested Plaintiff because he allegedly threatened to make a complaint against the officers. The HPD report attached as Exhibit B simply acknowledges that Plaintiff filed a complaint, and reiterates what was included in Plaintiff's complaint. (Pl. CSOF Ex. B.) The HPD report does not affirmatively state any facts of its own. Likewise, Exhibit C is a summary of the allegations that Plaintiff included in his complaint. (Pl. CSOF Ex. C.) In his testimony attached as Exhibit D, Gonzales merely acknowledges that he was expecting a complaint to be filed against him because Plaintiff had threatened to make a complaint during the incident. (Pl. CSOF Ex. D.) Nothing in Gonzales' statement supports Plaintiff's contention that Plaintiff's threat of a complaint induced Plaintiff's arrest. Takahara's statement in Exhibit G confirms only that Plaintiff demanded that a complaint be made and that the police officers attempted to ascertain what Plaintiff's complaint was. (Pl. CSOF Ex. G.) In the portion of Robertson's testimony attached as Exhibit E, Robertson simply states that he could not recall without reviewing his report whether Plaintiff used profanity directly at Gonzales specifically. (Pl. CSOF Ex. E.) This statement does not create an issue of fact as

16

to whether Plaintiff was behaving in a threatening manner toward the Seven-Eleven employees.  In Takahara's testimony, Takahara states that he did not think Plaintiff swore at the police while in the Seven-Eleven store, but did swear at Gonzales outside the store.  (Pl. CSOF Ex. F.)  Again, this does not create an issue of material fact as to whether Plaintiff behaved in a threatening manner to Rosokow.  These exhibits, in addition to Plaintiff's own self-serving statements, are the entirety of Plaintiff's "evidence" to oppose HPD Defendants' motion.  The testimony does not create any genuine issue of material fact.  It is clear from the hearing that Plaintiff's counsel was citing to the Court "evidence" that was in fact not in the record before the Court and is therefore argument.

This Court's review of Ninth Circuit precedent indicates that, when a party's conclusory allegations are entirely unsupported by evidence and are contradicted by opposing evidence, that party has not created a legitimate genuine issue of fact for trial.  The Ninth Circuit has "refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony." Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (citing Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996)).  "Conclusory allegations unsupported by factual data cannot defeat summary judgment."  Rivera v. Nat'l R.R. Passenger Corp., 331 F.3d 1074, 1078 (9th Cir. 2003).

17

The Ninth Circuit's 2009 opinion in Nelson v. City of Davis, 571 F.3d 924 (9th Cir. 2009) is instructive here.  In Nelson, a plaintiff sued the city and police officers pursuant to 42 U.S.C. § 1983 after being shot in the eye by a pepperball launcher while police were attempting to disburse a large party.  Id. at 926.  The plaintiff's testimony about where he was and what he was doing at the party was contradicted by testimony of other witnesses at the party, which was relevant to the issue of whether the plaintiff had been an intended target of the police.  The district court had granted summary judgment in favor of the defendants, based on an extension of the "sham affidavit rule," which is applicable to situations when a party attempts to create an issue of fact by making his own contradictory affidavits.  Id. at 928-29.  The Ninth Circuit vacated and remanded the judgment because of the district court's improper use of the sham affidavit rule.  Id. at 929.  The Ninth Circuit noted, however, that the holding was not intended to "curb[] a trial judge's existing discretion to grant summary judgment when a party fails to create a legitimate genuine issue of fact, either with her own affidavit or testimony from supporting witnesses."  Id. at 929 n.2.

In FTC v. Publishing Clearing House, Inc., 104 F.3d 1168 (9th Cir. 1997), the Ninth Circuit determined that a defendant had not created a genuine issue of fact based on her own affidavit.  Id. at 1171.  In that case, the FTC brought

18

an action against Publishing Clearing House (PCH) and its President for unfair or deceptive acts toward customers.  Id. at 1170.  The President argued in her defense that she did not have "requisite knowledge" of the misrepresentations made by PCH employees and therefore could not be held liable.  Id.  She claimed that she had only identified herself as "President" on the business application at the direction of another individual for legal reasons, and that she only worked at PCH for one week.  Id. at 1170.  Because neither her briefing nor her affidavits supplied any evidence of these facts, the Ninth Circuit determined that the President had failed to create a genuine issue of fact as to whether she, as President, could be held accountable.  Id.

In FTC v. Stefanchik, the Ninth Circuit applied the same reasoning to affirm a district court's grant of summary judgment to the FTC.  559 F.3d 924 (9th Cir. 2009).  In Stefanchik, the defendant President attempted to refute the FTC's evidence that the company's marketing scheme was misleading, but "did not offer any consumer declarations, contrary survey information, or other evidence showing that the followers of the Stefanchik method actually amassed substantial wealth as claimed in the marketing materials."  Id. at 927.  The Ninth Circuit stated that "a non-movant must show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in his favor.  A non-movant's

19

bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." Id. at 929 (emphasis in original).

Likewise, the Ninth Circuit applied this reasoning in Nilsson v. City of Mesa, where the court determined that a plaintiff had signed a waiver barring her 42 U.S.C. § 1983 claim against the police department after she applied for employment there. 503 F.3d 947 (9th Cir. 2007). Because the plaintiff had a college-level education and prior work experience with a police department, the court concluded that she "possessed sufficient education and experience to understand the waiver," despite the fact that she stated in her affidavit that she did not understand the waiver. Id. at 951-52 & 952 n.2. Because there was no other evidence besides her self-serving affidavit that she did not understand the waiver, the evidence before the district court did not present a genuine issue of fact, and the district court did not err in granting summary judgment for the defendants on this ground. Id.

The Court acknowledges that there is some ambiguity in Ninth Circuit case law on this point, as some panels have stated that the fact that a summary judgment affidavit is self-serving bears on its credibility and not on its ability to establish a genuine issue of fact. E.g., SEC v. Phan, 500 F.3d 895, 909 (9th Cir. 2007). Even in Phan, however, the panel noted that there will be

instances when a court can disregard a self serving declaration for purposes of summary judgment, such as when the declaration itself states only conclusions and no facts as would be admissible in evidence.  Id.

Based on this Court's review of case law, Ninth Circuit cases more factually on point with the case at hand, the fact that Plaintiff's own declaration does not affirmatively contradict the evidence presented in other testimonials, and the fact that there is absolutely no other evidence contradicting the testimonies of both HPD Defendants and the Seven-Eleven employees, Plaintiff has failed to demonstrate a genuine issue of fact for trial.  The uncontested facts, therefore, are that Plaintiff was observed yelling and moving toward Rosokow while pointing his finger and making accusations.  The situation within the Seven-Eleven became volatile, something which the Ninth Circuit recently cited as an important factor in granting officials qualified immunity in a circumstance much more compelling for the plaintiff than the case at hand.[2]

Considering the totality of circumstances known to the arresting officers and the volatile atmosphere in which the arrest was made, this Court concludes that a prudent person would have concluded that there was a fair probability that Plaintiff had or was committing harassment and needed to be

---

[2] Mattos v. Agarano, — F.3d —, 2010 WL 92478 (9th Cir. Jan. 12, 2010).

removed from the escalating situation.  The Court also concludes that a reasonable

officer could have believed that making an arrest was lawful under the

circumstances.  Plaintiff was observed yelling irately, pointing his finger toward

Rosokow, and moved toward her while yelling loudly.  She was fearful enough to

run away to the back room.  It was reasonable for HPD Defendants to believe that

Plaintiff had challenged Rosokow in such a manner as to cause Rosokow to

"believe that [Plaintiff] intends to cause bodily injury."  <u>See</u> Haw. Rev. Stat. § 711-

1106(b).

　　　　　For the reasons set forth above, Plaintiff has not met his burden to

present probative evidence in opposition to the motion for summary judgment, and

has not shown facts that make out a violation of the Fourth Amendment for lack of

probable cause.  HPD Defendants are therefore entitled to qualified immunity as to

Count IV.  Accordingly, Count IV is DISMISSED.

　　　　B.　　<u>Right to Liberty (Count V)</u>

　　　　　According to Plaintiff, his Fourteenth Amendment right to liberty was

violated when HPD Defendants "placed Plaintiff in handcuffs, in their locked

squad car and ultimately in a cage with bars . . . for some 14 hours."  (Opp'n at 13.)

Plaintiff's claim fails for two reasons.  First, as discussed herein, there is no probative evidence before the Court indicating a constitutional violation of any kind.  Second, for the reasons presented below, Plaintiff's Fourteenth Amendment claim fails as a matter of law.

Although Plaintiff's liberty claim is not fully developed, it appears that this claim is based both on Plaintiff's assertion that Plaintiff was arrested without probable cause and on the 14-hour detention.  HPD Defendants do not dispute that Plaintiff was arrested and then detained before charges were ultimately dropped.[3]

The Ninth Circuit "applies the Fourth Amendment standard to assess the constitutionality of the <u>duration</u> of or <u>legal justification</u> for a prolonged warrantless, post-arrest, pre-arraignment custody."[4]  <u>Pierce v. Multnomah County</u>, 76 F.3d 1032, 1043 (9th Cir. 1996) (emphasis in original) (citations omitted). "[T]he Fourth Amendment sets the applicable constitutional limitations on the

---

[3] The Court notes that the fact that charges were ultimately dropped does not, without more, suggest that the arrest was without justification.  There are many reasons why the city prosecutor may choose not to pursue a relatively minor offense where there was no actual bodily injury, including cost of prosecution, staff resources, etc.

[4] The Ninth Circuit also applies the Fourth Amendment standard to evaluate the condition of such custody.  <u>Pierce</u>, 76 F.3d at 1043.

23

treatment of an arrestee detained without a warrant up until the time such arrestee is released or found to be legally in custody based upon probable cause for arrest." Id.; see also Alexander v. City & County of Honolulu, 545 F. Supp. 2d 1122 (D. Haw. 2008) (applying the Fourth Amendment standard to treatment of arrestee pursuant to Pierce). The due process clause of the Fourteenth Amendment, on the other hand, protects the liberty of pretrial detainees[5] and convicted prisoners. See Redman v. County of San Diego, 942 F.2d 1435, 1440 (9th Cir. 1991); Valdez v. Rosenbaum, 302 F.3d 1039, 1045 (9th Cir. 2002).

Because the arrest and detention about which Plaintiff complains all occurred pre-arraignment, Fourth Amendment standards apply. Therefore, Plaintiff has failed to state a violation of his Fourteenth Amendment rights. Nor does this Court's review of the record indicate that Plaintiff would be able to cure this defect with an amended complaint. Accordingly, Count V is DISMISSED.

C.    Freedom of Association and/or Speech (Count III)

Plaintiff's third claim for relief is difficult to discern. In the FAC, Count III is titled "Violation of 1st Amendment Right to Association," but the

---

[5] Once an arrestee is found to be legally in custody based upon probable cause, that arrestee is a "pretrial detainee." See Alexander, 545 F. Supp. 2d at 1132.

complaint itself does not refer to freedom of association but instead references freedom of speech.  In his Opposition, Plaintiff clarifies that he is pursuing a free speech claim.  Plaintiff has submitted an Errata to replace the phrase "right to association" with the phrase "freedom of speech" in the caption of Count III. (Doc. # 64.)  Although Plaintiff's argument is muddled, it appears that Plaintiff is essentially arguing that HPD Defendants arrested Plaintiff after he informed them that he would file a complaint against them.  (FAC at 12-13.)

HPD Defendants ask this Court not to construe Count III as a freedom of speech claim, and claim that they would be prejudiced by Plaintiff now arguing something other than what he pled.  (Reply at 6.)  The Court finds this statement somewhat disingenuous, as in a prior order this Court noted that Count III is more properly construed as a free speech claim.  (Jan. 22, 2009 Order at 2 n.1.)  In fact, the claim itself explicitly references freedom of speech multiple times and states "Defendant Officers Gonzales, Robinson, and Nakasone arrested Plaintiff to punish him for expressing his constitutional right to free speech."  (FAC at 13.)

Whether this Court construes Count III as a freedom of speech claim or freedom of association claim, however, Count III fails for lack of any evidence beyond Plaintiff's conclusory allegations.  As discussed above, HPD Defendants

could have reasonably believed they had probable cause to arrest Plaintiff based on the volatile circumstances before them.  There is no indication that they made the arrest for any other reason.  When opposing a motion for summary judgment, Plaintiff is required to present some probative evidence that there is a material issue for trial or that a constitutional right was violated.  Plaintiff has not done so. HPD Defendants are therefore entitled to qualified immunity as to Count III. Accordingly, Count III is DISMISSED.

IV.    Claims against Doe Defendants

Plaintiff does not identify Does 1-20, and it appears from the complaint that there is no viable claim.  Accordingly, the complaint is DISMISSED as to Does 1-20 as well.

CONCLUSION

For the reasons stated above, the Court:  (1) GRANTS Defendant Gonzales' motion for joinder as construed as a joinder of simple agreement; (2) GRANTS Defendants' Motion for Summary Judgment; and (3) DISMISSES the case.

The Clerk of the Court is hereby directed to enter judgment in favor of Defendants.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, January 21, 2010.



_____
David Alan Ezra
United States District Judge

Ikei v. City and County of Honolulu, et al., CV No. 08-00395 DAE/BMK; ORDER:  (1) GRANTING DEFENDANT GONZALES' MOTION FOR JOINDER AS CONSTRUED AS A JOINDER OF SIMPLE AGREEMENT; (2) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND (3) DISMISSING THE CASE